The opinion of the court was delivered by
Breaux, J.
Plaintiff brought this action to recover a running horse from the defendant; also, for damages growing out of defendant’s illegal seizure and possession and for the fee of his attorney in the ease.
Plaintiff sets forth in his petition that he bought this horse, in 1898, from E. J. Ransom. lie charges, that the defendant, Pillot, pretended that Ransom, his (plaintiff’s) vendor, was indebted to him, had the horse seized and sold while it was in Chicago in 1898, and that he, Pillot, became the adjudicatee of the horse at the sale, although he, Pillot, was well aware at the time that he, plaintiff, was its owner; that the defendant took advantage of the fact that plaintiff was not in Chicago at that time to have the horse sold.
Plaintiff avers that the adjudication was absolutely null; that the defendant was not a creditor of Ransom, plaintiff’s vendor, and that the means resorted to to divest plaintiff were fraudulent and collusive.
The testimony of the witnesses was conflicting. The witnesses for the defendant testified that the sale under which plaintiff holds or claims is not real, but a simulation resorted to in order to protect Ransom, the vendor; while the witnesses for plaintiff contradicted those of the defendant on material points.
As there is written evidence, we pass from an examination of the oral testimony, contradictory as it is, to an examination of the documents signed by the parties interested.
The sale from Ransom to Rabb is in due form and was acknowledged before a notary public. One hundred dollars was the price of the horse. This sale is dated March 14th, 1898. On the same day, defendant, Pillot, sued for a writ of attachment against Ransom, which same was issued, and, under which writ, the horse sold to plaintiff was seized *1536 and attached. Three days after this attachment and seizure, plaintiff entered into a written agreement in which it was declared that, whereas Pillot had caused the horse to ba '.seized under a writ of attachment referred to in this instrument, as a horse claimed by plaintiff (quoting from the private act), “now in order to avoid litigation, and to make an amicable compromise of their respective claims,” the parties agreed, the latter, Pillot, to dismiss his attachment and release the horse from seizure upon the condition that plaintiff, Rabb, paid a certain feed bill and a training fee, and Rabb bound himself further to pay over to Pillot one-half of the winnings of this horse. The agreement was limited to the racing season of 1897 and 1898. We have noted that in the June following, Pillot, the defendant, had the horse sold. It appears that plaintiff, who was in Baton Rouge at the time, was informed by an attorney that his horse was under seizure in Chicago. Plaintiff testified that, at the time he could not prevent the sale, and that he made no attempt to stop it.
On March 30th, 1899, the horse then being in New Orleans, plaintiff brought this suit and was granted a writ of sequestration in accordance with his petition. Defendant bonded the sequestration and retained possession of the horse. The judge of the District Court rendered judgment for plaintiff, and from this judgment defendant appeals.
The principal question presented by the defendant is whether plaintiff is estopped from claiming this horse.
In support of this plea of estoppel, defendant invokes the well known principle, that one who stands by in silence while his own property is sold, and suffers another to become a purchaser, will be estopped from disputing the title so acquired. The case, in our judgment, does not fall within the rule of estoppel just referred to, for the reason that the defendant was not an innocent third person. He is charged with having connived with plaintiff’s vendor, and, without first refuting that charge, we do not think that he can invoke the rule with any degree of plausibility. It may give rise to a circumstance to be considered in determining the issues. But we do not think that affords ground upon which to base an absolute estoppel. One who is not a third person, is not entitled to the benefit of the plea. He, the defendant, was not misled in any way by the silence of the owner, as he was aware of all of the facts, especially if plaintiff’s charges are true, that he, defendant, was seeking by the sale, which he brought about in Chicago, to gain an un *1537 due advantage. The plea of estoppel does not .dispose of the case.
This brings us to the question whether, on the merits, it appears that the property was not- owned by plaintiff. Defendant is confronted by an instrument in writing to which effect must be given, until it is conclusively made to appear that he acted in error. The record does not disclose with anyj degree of certaijnty, that he, defendant, was induced into error. It is true that plaintiff’s title is not the result of a simple direct sale. The conditions are unusual, but they do not disclose that defendant is entitled to this horse. Eor reasons not made entirely plain, he chose to enter into a compromise, to which we have just referred, as evidenced by the deed by which he was confronted, in matter of his first suit, in which he had caused the horse to be attached and seized. This written act of compromise rendered it impossible for him to become the owner by purchasing in the manner followed, to which we have before referred. “No one can come against his own deed.” Nemo contra factum suum venire potest.
Furthermore, the evidence does not sustain defendant’s claim of simulation. His witnesses are contradicted by the notary public before whom the sale by Ransom to plaintiff was acknowledged. Defendant argues that the fact that plaintiff did not produce another witness to this instrument to testify is significant. The notary, who testified, said, that this witness was present in this city at the time of his giving his testimony, and that he had his address.
The following is the testimony on this point:
By defendant’s counsel:
“Q. — Who is this witness, James O. Harrell?
“A. — He was in my office at the time, and can be found at any time.
“Q. — James O. Harrell is in your office?
“A.- — No, not now.
“Q. — Where is he now?
“A. — I can find him any time you want him. James O. Harrell, for your information, used to have a desk in the office.
“Q. — Is he living in this city now ?
“A. — Yes, sir; I can find him any time you want him.”
The fact that this witness was not examined, at the instance of plaintiff, does not give rise to a presumption against him. Nothing disclosed that he sought, by not calling him as a witness, to withhold testimony from the court. We take it that the decisions cited by the *1538 counsel for the defendant to sustain his position on this £>oint are all grounded on the inference that the one failing- to cite a witness, or to produce evidence having a direct bearing upon the issues, is actuated by a desire to conceal facts over which he has some control. Nothing of the sort appears here:
From the evidence quoted above, it is manifest that defendant could have procured the testimony of this witness, and his failure to summon him can give rise to no presumption against plaintiff.
It is true that when one party to an action has in his exclusive possession a knowledge of facts which would throw light upon the transaction in the controversy, the failure to offer them in evidence may afford presumption against him. This is not that case; plaintiffs did not have “exclusive possession of knowledge.”
It appears from the testimony that these running horses have some sort of rental value. The witnesses fixed it at a considerable sum per month. The judge of the District Court fixed it-at ten dollars per month. We think that that amount, ten dollars per month, is sustained by the uncontradicted testimony of witnesses.
Plaintiff claims one hundred dollars as the fee of his attorney. This case does not sustain any such claim. Plaintiff in sequestration can find no support in the decisions of the Supreme Court for such a claim by a plaintiff claiming, property sequestered, and for damages.
It is therefore adjudged, ordered and decreed that the judgment appealed from be and the same is hereby affirmed.
Rehearing refused.