No. 2951

Second Circuit

WELLS v. CAGLE

ALBRECHT & COMPANY, Intervenor

(May 13, 1927. Opinion and Decree.)

(*Syllabus by the Editor*)

1. **Louisiana Digest—Agriculture—Par. 22; Estoppel—Par. 33, 45.**

The owner of a privilege on cotton under Article 3217 of the Civil Code for advances made to a tenant is equitably estopped against asserting his right to the privilege on the cotton in the hands of an innocent purchaser whom he misled by his conduct in permitting the tenant to sell other portions of the same crop to the same purchaser without demanding the proceeds.

Appeal from the Fifth Judicial District Court of Louisiana, Parish of Richland. Hon. John R. McIntosh, Judge.

Action by Edgar L. Wells against S. J. Cagle. S. Albrecht, intervenor.

There was judgment for plaintiff in intervention and defendant in intervention appealed.

Judgment affirmed.

Warren Hunt, of Rayville, attorney for plaintiff in intervention, appellee.

Ellis & Ellis, of Rayville, attorneys for defendant in intervention, appellant.

ODOM, J.   Several issues are raised in the pleadings in this case, but they have all been eliminated, except one.  It is not necessary to state any of them, except the one before the court.

That one is as follows:

The plaintiff, Wells, owns a plantation in Richland parish, which he leased to the defendant, Cagle, for the year 1926.

Cagle being without means to operate the plantation, in 1926, sought and obtained from Wells a loan of $1500.00 with which to make his crop.

The money advanced by Wells was used by Cagle in making the crop.  Wells, therefore, had a privilege on the proceeds of the farm that year under Article 3217 of the Civil Code.  Late in the fall of that year Cagle sold to Albrecht, the intervenor, six bales of cotton of the crop of that year.  Subsequent to the date of the sale of the cotton by Cagle to Albrecht, Wells brought this suit against Cagle to collect the sum advanced to make the crop, alleging that he had a privilege on the crop for his advances and caused Cagle's crop to be seized; along with other property, the six bales of cotton sold by Cagle to Albrecht were seized.

Albrecht intervened, claiming the ownership of the cotton, setting up that he had purchased it in open market from Cagle in good faith without notice that Wells had or claimed any privilege thereon, and pleads that Wells is estopped from claiming a privilege on the cotton, the grounds of estoppel being that Wells had stood by silently and permitted Cagle to sell the crop without asserting any claim or privilege thereon and without giving notice to that effect.

The district judge rendered judgment in favor of Albrecht & Company, the intervenor, declaring it to be the owner of the cotton in controversy.

As stated, all issues and controversies between Wells and Cagle have been eliminated from the case.  The sole issue before us is between Wells and the intervenor, Albrecht & Company, and is whether Wells can, under the circumstances disclosed, enforce his privilege against the six bales of cotton.

Counsel on both sides seem to concede that Wells' privilege as furnisher of money to make the crop followed the cotton into the hands of Albrecht & Company.  Admittedly Albrecht & Company purchased the cotton in open market from Cagle, the owner, at Delhi, Louisiana, paying therefor the market price, without notice or knowledge that Wells had or claimed any privilege thereon, Wells having no recorded crop pledge.

Apparently this question was not raised in the District Court.  The only issue there raised was that of estoppel.  As that issue was not raised and passed on by the district judge we shall not pass upon it but consider the case as though Wells' privilege followed the cotton into the hands of Albrecht & Company.  However, our decision is not to be construed to mean that we concede that point.

Wells unquestionably had a privilege on the cotton and other products of the farm grown and produced by Cagle, under Article 3217 of the Civil Code; but under the circumstances disclosed we think he is equitably estopped from asserting that privilege on the cotton in the hands of Albrecht & Company, the intervenor.

In the year 1926, the year in which the cotton was grown, Cagle had lived upon and cultivated Wells' plantation. He had full charge of it, managed and cultivated it, sold the cotton without let or hindrance from Wells, collected and handled the proceeds as he saw fit.

Albrecht & Company is a cotton buyer and was represented in that territory by Higginbotham. For a period of some five or six years, including 1926, Higginbotham had each season purchased cotton from Cagle. He had always dealt with Cagle, purchased cotton from him and paid him for it. In the fall of 1926 Wells was on this plantation, living a portion of the time in the house of Cagle. In October Higginbotham purchased from Cagle a lot of some thirty bales of cotton of the crop of that year. At the time that lot of cotton was purchased, Wells was present and witnessed the transaction. Cagle negotiated the sale. When the deal was closed, Wells being present, Higginbotham knowing that the cotton was produced on Wells' place, asked to whom payment was to be made, and Wells instructed him to pay Cagle, whereupon Higginbotham drew a draft in favor of Cagle, who collected it. Wells remained on the plantation or in that vicinity and must have been in close touch with Cagle's operations.

Cagle gathered and ginned more cotton, including the six bales in question. When the cotton was ready for market he carried it to Delhi and sold it, not all at one time, to Higginbotham, who drew on Albrecht & Company for the price, the draft being in favor of Cagle.

These sales were made precisely as the one of thirty bales, except that Wells was not present and gave no specific assent thereto. Wells, as stated, was on the plantation or in the community and knew what Cagle was doing and knew the customary course of dealings between Higginbotham and Cagle, and must have known that Cagle was removing the cotton from the place and selling it, yet he in no way intimated to Higginbotham or anyone else, so far as the record discloses, that he had or claimed any privilege on the cotton or that he was dissatisfied with Cagle's conduct in disposing of the crop and collecting and appropriating the proceeds. If he expected to assert his privilege on the cotton he should not have remained silent. It was his duty to speak. Not only that, he was present when Cagle sold thirty bales of the crop to Higginbotham and expressly sanctioned that sale. He has, therefore, by his conduct, led Albrecht & Company, through its agent, Higginbotham, to deal with Cagle as though he had full authority to sell the crop and collect the proceeds. He cannot thus mislead a third party to the latter's injury. If he is now permitted to assert his privilege on the cotton, Albrecht & Company is an innocent sufferer.

The doctrine sanctioned by universal jurisprudence is to the effect:

"That an equitable estoppel arises when a party to an action has, by his fault or negligent conduct, induced his adversary either to do or omit some act or acts by

means of which the loss which is claimed against him might have been averted."

Wilson Sewing Machine Co. vs. Express Co., 42 La. Ann. 593 (599), 7 South. 710.

This doctrine would not apply, of course, if Albrecht & Company had not been an innocent purchaser.

Rabb vs. Louis Pilot, Sr., 52 La. Ann. 1534, 28 South. 120.

"Where a person with actual or constructive knowledge of the facts induces another, by his words or conduct, to believe that he acquiesces in or ratifies a transaction, as that he will offer no opposition thereto, and that the other, in reliance on such belief, alters his position, such person is estopped from repudiating such transaction to the other's prejudice."

16 Cyc. 791.

"To make the silence of the party operate as an estoppel, the circumstances must have been such as to render it his duty to speak. It is essential that he should have had knowledge of the facts, and that the adverse party should have been ignorant of the truth and have been misled into doing that which he would not have done but for such silence."

16 Cyc. 759.

The judgment appealed from is affirmed.